# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

IDEA BOARDWALK, LLC,

Appellant,

v.

REVEL AC, INC. et al.,

Appellees.

No. 15-1253

## EMERGENCY MOTION OF IDEA BOARDWALK, LLC
## FOR STAY AND EXPEDITED APPEAL

Appeal from Order dated January 21, 2015, entered by the
United States District Court, District of New Jersey Case No. 15-cv-00299 (JBS)

Jonathan I. Rabinowitz, Esq.
Jeffrey A. Cooper, Esq.
Barry J. Roy, Esq.
John H. Harmon, Esq.
RABINOWITZ, LUBETKIN & TULLY, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
(973) 597-9119 (Fax)
*Attorneys for Appellant, IDEA Boardwalk, LLC*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ................................................................... iii

Introduction ........................................................................... 1

Statement of Facts and Procedural History................................ 5

Statement of Jurisdiction ......................................................... 13

Legal Argument

Point I.............................................................................. 15

    IDEA Is Entitled To Apply To The Court Of Appeals For A Stay Pending Appeal On An Expedited Basis

Point II........................................................................... 16

    IDEA Is Entitled To A Stay Pending Appeal

Point III.......................................................................... 45

    This Court Should Grant Expedited Review Of This Appeal

Conclusion........................................................................... 45

# TABLE OF AUTHORITIES

## CASES

Barnegat Village Square, LLC v. Safeway, Inc., 2013 WL 6021955 at *3 (D.N.J. Nov. 13, 2013) ........................................................................................................................... 30

Carson v. American Brands, Inc., 450 U.S. 79, 83-84 (1981) ..................................................... 14

Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304 (E.D. Pa. 2007) ................................................................................................................... 41

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992 ................................................... 14

Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978) ................................. 17

Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981)................... 41

Dishi & Sons v. Bay Condos LLC, 2014 WL 2199819, at *9-10 (S.D.N.Y. May 28, 2014) 28,34, 38

Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership (In re Family Kingdom, Inc.), 225 B.R. 65, 69 (D.N.J. 1998) ................................................................................................... 17

H.R. Rep. No. 95-595, at 349 (1978)........................................................................................... 21

Hilton v. Braunskill, 481 U.S. 770, 777 (1987)........................................................................... 17

Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp., 397 F.Supp. 2d 537, 548 (D. Del. 2005).... 18

In re A&F Enterprises, Inc. II, 742 F.3d 763, 766 (7th Cir. 2014) ............................................... 3

In re Barney's, Inc., 206 B.R. 328, 332 (Bankr. S.D.N.Y. 1997) ................................................ 30

In re Blue Coal Corp., 986 F.2d 687, 689 (3d Cir. 1993))........................................................... 15

In re Buckingham, 197 B.R. 97, 101 (Bankr. D. Mont. 1996) ..................................................... 43

In re Churchill, 197 B.R. 283 (Bankr. N.D. Ill. 1996)........................................................... 22, 23

In re Crumbs Bake Shop, Inc., 2014 WL 5508177 ...................................................................... 22

In re DiClemente, Civil Action No. 12-1226 (FLW), 2012 WL 521192 ..................................... 17

In re Dunes Hotel Assocs., 212 B.R. 110 (Bankr. D.S.C. 1997) .................................................. 34

In re Exennium, Inc., 715 F.2d 1401 (9th Cir. 1983) ................................................................... 15

In re Genesis Health Ventures, Inc., 280 B.R. 339 (D. Del. 2002).............................................. 44

In re Grove Peacock Plaza, Ltd., 142 B.R. 506, 511 (Bankr. S.D. Fla. 1992)............................. 43

iii

In re Haskell, L.P., 321 B.R. 1 (Bankr. D. Mass. 2005) ............................................ 22,23,24,38

In re Hechinger Inv. Co., 2005 WL 1793503 at *2 (3d Cir. July 29, 2005) ............................. 38

In re L.A. Dodgers LLC, 465 B.R. 18, 28 (D. Del. 2011) ............................................... 17

In re LHD Realty Corp., 20 B.R. 717 (Bankr. S.D. Ind. 1982) ........................................ 20

In re Makowka, 754 F.3d 143, 147 (3d Cir. 2014) .................................................... 19

In re Meyertech Corp., 831 (F.2d 410, 414 (3d Cir. 1987) ............................................ 15

Nordhoff Investments, Inc. v. Zenith Electronics Corp., 258 F.3d 180 (3d Cir.2001) ................. 44

In re One 2 One Communications, LLC, 2013 WL 3864056 (D.N.J. July 24, 2013) ................... 42

In re Quade, 496 B.R. 520 (Bankr. N.D. Ill. 2013) .................................................... 44

In re REPH Acquisition Co., 143 B.R. 194, 206 (N.D. Tex. 1991) ..................................... 43

In re Samaritan Alliance, LLC, 2007 WL 4162918 (Bankr. E.D. Ky. Nov. 21, 2007) ............... 23

In re Sax, 796 F.2d 994 (7th Cir. 1986) ............................................................... 15

In re Scharp, 463 B.R. 123, 131 (Bankr. C.D. Ill. 2011) ............................................... 29

In re Smith, 170 B.R. 111, 117 (Bankr. N.D. Ohio 1994) ............................................... 43

In re Suprema Specialties, Inc., 330 B.R. 93 (S.D.N.Y. 2005) ......................................... 43

In re Taylor, 198 B.R. 142 (Bankr. D.S.C. 1996) .................................................. 20,22,29

In re Trans World Airlines, Inc., 18 F.3d 208 (1994) .................................................. 14

In re UAL Corp., 307 B.R. 618, 632 (Bankr. N.D. Ill. 2004) ........................................... 32

In re W.R. Grace & Co., 475 B.R. 34 (D. Del. 2012) .................................................. 44

In re Zota Petroleums, LLC, 482 B.R. 154, 163 (Bankr. E.D. Va. 2012) ............................. 22,23

Inverness Corp. v. Whitehall Labs., 819 F.2d 48, 50 (2d Cir. 1987) ................................... 39

Kennecot Corp. v. Smith, 637 F.2d 181, 184 (3d Cir. 1980) ............................................ 45

Matter of Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997) ......................... 14

Mellon Bank NA v. Metro Communications Inc., 945 F.2d 635, 642 (3d Cir. 1991) ................. 19

Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011) ........................... 42

Ortho Pharmaceutical Corp. v. Amgen, Inc., 887 F.2d 460, 464 (3d Cir. 1989) .......................... 3

PCH Assoc., 804 F.2d at 200 ......................................................................... 30

Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 548 (7th Cir. 2003)
.................................................................................................... 12,24,25

In re S.A. Holding Co., L.L.C., 2007 WL 1598113 (D.N.J. May 30, 2007) ............................. 17

Seide v. Crest Color, Inc., 835 F.Supp. 732, 738 (S.D.N.Y. 1993) ..................................... 41

Thiokol Chemical Corp. v. Morris County Board of Taxation, 41 N.J. 405 (1964) .................. 30

United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,

163 F.3d 341, 348 (6th Cir. 1998) ...................................................................................... 3

United Healthcare Systems, Inc., 396 F.3d 247, 249 (3d Cir. 2005)........................................ 19

## STATUTES

11 U.S.C. § 363(3) ....................................................................................................................... 37

11 U.S.C. § 363(e) ............................................................................................................ 18,37,38

11 U.S.C. § 363(f)........................................ 3,4,10,11,12,16,19,20,22,23,24,28,29,35,36,38

11 U.S.C. § 363(f)(4) ..................................................................................................... 18,29,34

11 U.S.C. § 365(h)....................................................... 1,3,4,5,7,8,10,11,12,13,18,19,20,21,22,23

28 U.S.C. § 1292(a)(1)................................................................................................................ 14

## RULES

Federal Rule of Appellate Procedure Rule 8 ............................................................................. 15

Federal Rule of Civil Procedure 52 ................................................................................... 18,39

## TREATISES

Williston on Contracts 4th Ed. § 78:44 (2014)........................................................................... 30

## INTRODUCTION

Through this emergent motion, IDEA Boardwalk, LLC (the "Appellant"),
seeks an immediate stay of certain portions of a Bankruptcy Court sale order au-
thorizing the Debtors to sell all of their assets free and clear of the Appellant's
leasehold rights under 11 U.S.C. § 365(h), including possession, potentially moot-
ing its appeal of this matter of first impression in the Third Circuit.  Currently there
is no stay in effect and the Debtors and their prospective purchaser could close at
any time.  The parties' asset purchase agreement requires them to close on or be-
fore February 7, 2015.

The Appellant has appealed the Bankruptcy Court sale order and moved be-
fore the District Court for a stay pending appeal.  The District Court denied Appel-
lant's motion for a stay pending appeal, and the Appellant has accordingly appealed
that order, which appeal is before this Court.  However, absent the relief requested
by the motion, the Appellant's rights under § 365(h) may be extinguished before
this Court is able to decide the appeal.

Appellant is a tenant at the Revel Casino Hotel (the "Revel").  Appellant
signed a 25 year lease with the Debtors for the purpose of operating nightclubs and
a dayclub at the casino.  In so doing, the Appellant relied on non-disturbance pro-
visions and the long established protection of a tenant's right to possession of its
premises, even in the event of bankruptcy, as a major inducement to enter into the

1

lease and to commit significant cash to improve the leasehold premises. The Appellant spent $16,000,000 of its own cash, for tenant improvements, to outfit the nightclubs and the dayclub, including for plumbing, electric, lighting, sound, bathrooms, bars, furniture fixtures, equipment, etc.

The Appellant operated a successful and profitable business continuously from May 2012 through September 2014, at which time the Debtors locked the Appellant out of its premises. Moreover, the Appellant paid millions of dollars of rent to the Debtors during its tenancy, despite numerous defaults by the Debtors on the lease.

The Bankruptcy Court order authorizing the sale of the Debtors' assets free and clear of the Appellant's possessory interest dispossess a good faith, law abiding, tenant of a profitable business in order to turn its leasehold over to a third party purchaser who is completely unrelated to the tenant; and bestow the premises upon a brand new tenant, who will then reap substantial economic benefit, all at the sole expense of the original good faith tenant. This is inequitable, contrary to public policy, bad law and just plain wrong.

Appellant moves this Court on an emergent basis for a stay pending appeal of the January 21, 2015 Order (the " Denial of Stay Order") of the United States District Court, District of New Jersey (the "District Court"). Through the Stay Order, the District Court denied the Appellant's motion for a stay pending appeal of

the January 8, 2015 Order (the "Sale Order") of the United States Bankruptcy Court, District of New Jersey (the "Bankruptcy Court"). The Sale Order, pursuant to 11 U.S.C. § 363(f), authorizes the Debtors to sell the assets of Revel free and clear of the Appellant's right to continued possession of its leasehold interest under 11 U.S.C. § 365(h).

As stated above, through this motion, the Appellant seeks a stay that protects the integrity of the appellate process by ensuring that there will be a controversy for which some form of relief may be granted once the appeal is finally heard, to wit, a stay of <u>only</u> such terms and provisions of the Sale Order that authorize the Debtors to sell their assets free and clear of IDEA's possessory interests under 11 U.S.C. § 365(h), specifically paragraph 14 of the Sale Order, which cuts off Appellant's possessory rights upon closing. See <u>Ortho Pharmaceutical Corp. v. Amgen, Inc.</u>, 887 F.2d 460, 464 (3d Cir. 1989) [1]. Support for the requested provisional remedy can be found in <u>In re A&F Enterprises, Inc.</u>, II, 742 F.3d 763 (7th Cir. 2014). In <u>In re A&F</u>, the circuit court fashioned an order which stayed the effect of the underlying bankruptcy court order that was subject to appeal in the district court on the merits, while it determined whether the district court erred in denying the appellant's stay request. This is precisely the case at bar.

---

[1] The factors that a movant must prove in order to obtain a prohibitory or mandatory injunction are similar. See <u>United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.</u>, 163 F.3d 341, 348 (6th Cir. 1998).

Appellant also seeks an expedited briefing and argument schedule pursuant to L.A.R. 4.1 because, if a stay pending appeal is not granted, the Debtors and prospective purchaser, Polo North Country Club, Inc. ("Polo North") may close on the sale of the Revel, thereby divesting the Appellant of its possessory rights and possibly rendering moot its appeal of this important legal issue, whether § 365(h) of the Bankruptcy Code (the "Code") trumps § 363(f), a matter of first impression in the Third Circuit, an a matter disputed among lower courts nationally.

The Appellant satisfies the four-prong test necessary for the entry of a stay pending appeal. First, the Appellant is likely to succeed on the merits of its appeal because the Bankruptcy Court's conclusion that the assets of Revel can be sold free and clear of the Appellant's rights of possession under 11 U.S.C. § 365(h) is clearly erroneous as a matter of fact and is reversible error as a matter of law.

Second, absent a stay pending appeal, the Appellant will suffer irreparable harm. Upon closing, Polo North will have the right to use or alienate the assets of Revel in a way that is inconsistent with the Appellant's rights pursuant to § 365(h) of the Code, including by removing the Appellant's $16 million investment in tenant fit-out, selling the fixtures in Appellant's leased premises to third parties and leasing the space to a new tenant.

Third, there is no evidence to suggest that the Debtors and Polo North will suffer substantial harm as the result of a stay pending appeal. Thus, the balance of

the equities favors the Appellant. There is nothing in the record that supports the need for an immediate closing. Moreover, closing could adversely affect the full and complete determination of the Appellant's rights in the District Court as to whether the Appellant is entitled to the benefit of the protections afforded by § 365(h).

Fourth, public policy will be furthered by the granting of a stay pending appeal,: (1) as the Appellant's right to appeal this important legal issue will not be rendered moot by operation of law if a stay is granted; and (2) the intent of Congress to protect leasehold interests and real estate leasing and financing in general will be preserved by the grant of a stay.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2012, Angel Management Group, one of the largest nightlife entertainment companies in North America, and Revel Entertainment Group, LLC ("REG") negotiated a lease (the "Lease") for the construction of two (2) nightclubs and a pool club (collectively, the "Venues") to operate within the Revel. The Lease was signed on May 12, 2012. The Lease was formally assigned, with REG's consent, to the Appellant, a commercial real estate developer based in Hoboken, New Jersey, on May 31, 2012. Exhibit "A", District Court Docket ("DC Dkt.") No. 3. A Memorandum of Lease was recorded in the Atlantic County Clerk's Office and Subordination and Non-Disturbance Agreements ("SDNAs") were signed with all

of the mortgagees, which SDNAs were also recorded in the Atlantic County Clerk's Office.

As stated, the Lease required REG to construct the Venues. In accordance with the terms of the Lease, the Appellant paid, in or about May 2013, $16 million in cash as its share of tenant fit-out expenses. The Lease is a percentage rent lease, with an initial term of 10 years and three (3) five-year options.

On June 19, 2014, REG and its affiliates (the "Debtors") filed their second voluntary Chapter 11 bankruptcy in a little over two (2) years. As part of their first day filings, on June 20, 2014, the Debtors filed a motion seeking, among other things, an order authorizing and approving the sale of the assets of Revel free and clear of liens, claims, encumbrances and interests (the "Sale Motion").

On July 14, 2014, the Bankruptcy Court entered an order authorizing, among other things, that the assets of Revel would be sold by auction to be conducted on August 7, 2014 (the "Bid Procedures Order").

In response to the Sale Motion, on August 1, 2014, the Appellant filed a Limited Objection of IDEA Boardwalk, LLC to Entry of an Order Authorizing and Approving the Sale of the Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances and Interests (the "IDEA Sale Objection"). Exhibit "B", Bankruptcy Court Docket ("BK Dkt.") No. 380. Through the IDEA Sale Objection, the Appellant opposed any efforts to sell free and clear of its possessory rights under

6

11 U.S.C. § 365(h).

On August 6, 2014, the Debtors filed a Notice of Adjournment of Auction through which they adjourned the auction sale of the assets of Revel to August 14, 2014. On August 11, 2014, the Debtors issued notice to the Appellant that they intended to close the sale of Revel's assets by no later than September 10, 2014. On August 13, 2014, the Debtors filed a Second Notice of Adjournment of Auction which adjourned the auction sale of the assets of Revel without date. On August 19, 2014, the Debtors announced that they would be accelerating the closing of the Revel to September 2, 2014.

On August 28, 2014, the Debtors filed Debtors' Second Omnibus Motion to Reject Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Shutdown Date (the "Rejection Motion")[2]. Exhibit "C", BK Dkt. No. 554. In the Rejection Motion, the Debtors sought to reject not only the Lease, but also the leases of its other tenants, ACR Energy, American Cut AC Marc Forgione, LLC, Azure AC Allegretti, LLC, Exhale Enterprises XXI, Inc., GRGACI, LLC, GRGAC2, LLC, GRGAC3, LLC, Lugo AC, LLC, Mussel Bar, AC, LLC, PM Atlantic City, LLC and The Marshall Retail Group, LLC. With the exception of ACR Energy, these other tenants have designated themselves as the "Amenity Tenants" in various pleadings before the Bankruptcy Court, and been referred to as such throughout the

---

[2] A hearing on the Rejection Motion is currently scheduled for February 11, 2015.

7

litigation.

On September 2, 2014, the Debtors halted operations, locked the Revel's doors, and forced a cessation of the Appellant's ability to operate the Venues. On September 3, 2014, the Appellant filed an adversary complaint (the "Complaint") against REG seeking, among other things, injunctive relief, including temporary, preliminary and permanent restraints that would compel REG to abide by the terms of the Lease. On September 23, 2014, the Appellant amended the Complaint seeking, among other things, injunctive relief, including temporary, preliminary and permanent restraints, in order to protect its rights under the Lease that are in or appurtenant to the real property, including the right to continued possession, utilities and necessary easements in the event the Appellant exercised its rights under § 365(h). The Complaint against REG is still pending. The Debtors filed a Motion to Dismiss the Complaint in which they contend that the Lease is not a "true lease." A hearing on the Debtors' dismissal motion in the bankruptcy court is scheduled for February 11, 2015.

On September 15, 2014, the Bankruptcy Court entered an order approving the selection of Polo North as the Debtors' stalking horse purchaser. On September 24 and 30 and October 1, 2014, the Debtors conducted an auction. Brookfield US Holdings, LLC ("Brookfield") was the successful bidder with a bid of $110 million. On October 1, 2014, the Debtors filed their Notice of Selection of Successful

Bidder and Back-Up Bidder selecting (i) Brookfield as the Successful Bidder and (ii) Polo North as the Back-Up Bidder. On October 7, 2014, the Bankruptcy Court entered an Order approving the sale of the assets of Revel to Brookfield.

October 13, 2014, the Appellant filed an Objection of IDEA Boardwalk, LLC to (i) Debtors' Second Omnibus Motion to Reject Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Shutdown Date and (ii) in Further Support of the Relief Sought in its First Amended Complaint. Exhibit "D", BK Dkt. No. 754.

On November 19, 2014, Brookfield informed the Debtors and publicly disclosed that it was repudiating its agreement to purchase the Revel. On December 12, 2014, the Bankruptcy Court entered an order (the "Brookfield Termination Order") approving the Debtors' decision to terminate the sale with Brookfield and scheduling a hearing to consider entry of an order approving a sale to Polo North (the "Polo North Sale Order").

A hearing on the Polo North Sale Order was scheduled for January 5, 2015. Pursuant to the Brookfield Termination Order, all objections, including the IDEA Sale Objection, previously filed in connection with the sale to Brookfield were preserved pending further hearing.

On Friday, January 2, 2015, at 10:14 p.m., the Debtors, in what can only be described as "ambush litigation," filed an Omnibus Reply to Objections to Entry of

Order Approving the Sale of the Debtors' Assets to Polo North County Club, Inc. (the "Omnibus Reply"). Exhibit "E", BK Dkt. No. 1109. Through the Omnibus Reply, the Debtors argued, for the first time, a mere two days prior to the sale hearing, that: (1) the Lease was not a true lease as envisioned under 11 U.S.C. § 365; and (2) they could sell free and clear of the Appellant's possessory interests under § 365(h) because they are able to meet condition (4) of § 363(f), asserting the Lease is subject to a *bona fide* dispute.

In the Omnibus Reply, the Debtors made nothing more than an unsupported conclusory allegation in a few paragraphs that the Lease might really be a joint venture or management agreement. These unsubstantiated arguments were made notwithstanding the clear fact that the Lease is unquestionably a lease in accordance with the legal definition set forth in Point II(A)(2) supra (the lease is for a term of years; the Appellant must give up all interest in the leased premises at the end of the term; the Appellant has sole possession of the leased premises; the Debtors had no right of entry without a judgment of possession from the state court; a memorandum of lease was recorded; and the Debtors' mortgagees acknowledged the Appellant's right as a tenant and gave the Appellant non-disturbance in the event of a foreclosure so long as the Appellant was not in default of its obligations under the Lease).

On Sunday, January 4, 2015, the Appellant filed a response to the Omnibus

Reply. Exhibit "F", BK Dkt. No. 1114. In its response, the Appellant requested, due to the late filing of the Omnibus Reply, that it be given additional time to supplement its legal and factual submissions and argued, in short, that the Debtors could not sell free and clear of its possessory interest because the Debtors could not satisfy 11 U.S.C. § 363(f).

On January 5, 2015, the Bankruptcy Court conducted oral argument in connection with the Sale Order. At oral argument, the Appellant argued, among other things, that the Debtors should not be able to sell the assets of Revel free and clear of its possessory interest because: (1) 11 U.S.C. § 365(h) serves to protect a lessor of non-residential real estate in the context of a § 363 sale; (2) the Debtors had not met their evidentiary burden of proving that the Lease was the subject of a *bona fide* dispute pursuant to 11 U.S.C. § 363(f)(4); and (3) the Debtors have not proffered adequate protection as required pursuant to 11 U.S.C. § 363(e).

On January 8, 2015, the Bankruptcy Court, after limited additional legal argument and without making any findings of fact or conclusions of law regarding the Lease, rendered a decision granting the Sale Motion (the "Decision"). Exhibit "G".

On January 8, 2015, the Bankruptcy Court entered the Sale Order. Exhibit "H", BK Dkt. No. 1138. Pursuant to the terms of the Sale Order, the assets of Revel are being sold to Polo North free and clear of the Appellant's possessory

rights under 11 U.S.C. § 365(h).

Specifically, paragraph 14 of the Sale Order states as follows:

> Notwithstanding anything to the contrary in the Agreement or this Sale Order, the Sale of the Debtors' Assets pursuant to 11 U.S.C. § 363(f) shall be free and clear of existing tenancies and/or possessory rights, irrespective of any rights a tenant may hold under 11 U.S.C. § 365 (h), including, but not limited to, all possessory rights under section 365(h) of the Bankruptcy Code of each of the tenants comprising the Leasehold Interests identified in Section 1.1(b) of the Seller's Disclosure Letter, provided the effectiveness of the sale of the Assets free and clear to Purchaser under the Agreement and this Order shall be concurrent with the occurrence of the Closing.

In summary, without an adequate evidentiary record before it, the Bankruptcy Court adopted the holding set forth in the Seventh Circuit's decision in Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, and entered the Sale Order.

As will be discussed, the Bankruptcy Court's reliance on Qualitech was incorrect, as § 365(h) affords protection to tenants in the context of a sale and rejection. As stated, this discrete legal issue is a matter of first impression in the Third Circuit.

Subsequent to the rendering of the Decision, counsel for the Appellant made an oral application to the Bankruptcy Court for a stay pending appeal on the ground that without a stay, the appeal could become moot. The Bankruptcy Court

denied this request[3].

On January 14, 2015, the Appellant filed its Notice of Appeal from the Sale Order.

On January 16, 2015, the Appellant, filed an emergent motion for a stay pending appeal with the District Court.  Exhibit "J", DC Dkt. No. 3.  On January 21, 2015, the District Court denied the Appellant's request for a stay pending appeal by issuing an Opinion and entering an Order.  Exhibits "K" and "L", DC Dkt. Nos. 24 and 25.  On January 22, 2015, the Appellant filed a Motion with the District Court requesting that it directly certify the Sale Order to this Court pursuant to 28 U.S.C. § 158(d). DC Dkt. No. 27.  On January 23, 2015, the District Court denied the Appellant's request for direct certification of the Sale Order by issuing a Memorandum Opinion and Order. DC Dkt. No. 32.

In an effort to protect its possessory rights under 11 U.S.C. § 365(h) and to have this important legal issue, a matter of first impression in the Third Circuit, heard on the merits, as opposed to having it possibly rendered equitably moot, on January 28, 2015, the Appellant filed a Notice of Appeal of the Denial of Stay Order.

## STATEMENT OF JURISDICTION

---

[3] On January 14, 2015, the Bankruptcy Court entered an Order Denying the Oral Motion of IDEA Boardwalk, LLC for Stay Pending Appeal.  Exhibit "I", BK Dkt. No. 1158.

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1292(a)(1), which provides appellate jurisdiction for appeals from interlocutory orders granting injunctive relief. This jurisdictional basis applies to interlocutory orders issued by district courts acting in an appellate capacity in bankruptcy cases. Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992). An order that is not labeled as an injunction but that has the effect of granting or denying an injunction and has "'serious, perhaps irreparable consequences'" is appealable as of right pursuant to 28 U.S.C. § 1292(a)(1). Matter of Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997) (quoting Carson v. American Brands, Inc., 450 U.S. 79, 83-84 (1981)). An order denying a stay pending appeal of a bankruptcy court order terminating leasehold rights has the effect of an injunction and has serious, perhaps irreparable consequences, warranting jurisdiction under 28 U.S.C. § 1292(a)(1). In re A&F, 742 F.3d at 766[4].

---

[4] In the interests of scrupulous compliance with its obligation to apprise this Court of contrary precedent, the Appellant notes that this Court has held that a district court order granting a stay pending appeal of a money judgment pursuant to Federal Rule of Civil Procedure 62(d), which judgment was effectuated by a bankruptcy court order, was not appealable as of right pursuant to 28 U.S.C. § 1292(a)(1). In re Trans World Airlines, Inc., 18 F.3d 208 (1994). The Appellant respectfully submits that this decision does not constitute contrary binding precedent because the order staying the enforcement of a judgment pending appeal that was at issue in Trans World is vastly different from the Denial of Stay Order, which denied the stay of a sale that will irreparably destroy the Appellant's leasehold rights.

In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. § 158(d)(1) as the Denial of Stay Order is tantamount to a final Order.

This Court has frequently noted that it has "taken a flexible, practical approach to interpreting the finality requirement in bankruptcy cases." In re Blue Coal Corp., 986 F.2d 687, 689 (3d Cir.1993); accord F/S Airlease II, 844 F.2d 99, 103 (3d Cir. 1988) (describing a "more pragmatic and less technical way [of viewing finality] in bankruptcy cases than in other situations" (internal quotation marks omitted)). This entails balancing "a general reluctance to expand traditional interpretations regarding finality and a desire to effectuate a practical termination of the matter before us." In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir.1987). In this case, the Denial of Stay Order has the impact of a final order, as it effectively approves the sale of all the estate's assets. See In re Sax, 796 F.2d 994 (7th Cir. 1986) (holding an order approving the sale of a debtor's assets to be final); In re Exennium, Inc., 715 F.2d 1401 (9th Cir. 1983) (same). In this particular instance, the impact of the Denial of Stay Order will be tantamount to a final order.

## LEGAL ARGUMENT

### POINT I.

### IDEA IS ENTITLED TO APPLY TO THE COURT OF APPEALS FOR A STAY PENDING APPEAL ON AN EXPEDITED BASIS

Federal Rule of Appellate Procedure Rule 8 governs the issuance of a stay pending appeal. Rule 8 provides that this Court has the discretion to issue a stay

pending appeal in this matter as both the Bankruptcy Court and the District Court have previously denied similar applications. <u>See</u> Exhibits "I" and "B". Further Rule 8(a)(D) and Local Rule 27 gives this Court the discretion to hear a litigant's request for a stay pending appeal on an expedited basis before a single judge to the extent time constraints preclude the manner being heard before a panel. As set forth previously, if a stay is not imposed prior to the Debtors and Polo North closing on the sale of the assets of Revel, the Appellant's appeal of this important legal issue may be rendered moot, as the closing will terminate the Appellant's possessory rights. As set forth above, despite the Bankruptcy Court and the District Court being aware of such repercussions, those courts denied the Appellant's motions for stay pending appeal. In order to protect the Appellant's right to have its appeal heard on the merits, this Court should hear this motion on an expedited basis.

## POINT II.

## IDEA IS ENTITLED TO A STAY PENDING APPEAL

The Appellant is entitled to a stay pending appeal of the Denial of Stay Order for a variety of reasons, including, but not limited to, the fact that it has a substantial likelihood of success on the merits of its appeal of the Sale Order. Both the Bankruptcy Court and the District Court incorrectly ruled as a matter of law that § 363(f) of the Code can be utilized by Debtors to strip their non debtor tenants of their possessory rights. As stated previously, this discrete legal issue is a matter of

first impression in the Third Circuit.

In determining whether to grant a stay, a court considers the following factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury if the stay is not granted; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest. In re Family Kingdom, Inc., 225 B.R. 65, 69 (D.N.J. 1998). These factors are the same factors required of a party seeking a preliminary injunction. See e.g., In re L.A. Dodgers LLC, 465 B.R. 18, 28 (D. Del. 2011).

Recent case law in this Circuit holds "these factors should not be rigidly applied, but require a determination based on the individual circumstances of a particular case." S.A. Holdings, 2007 WL 1598113, at *1 (citing Hilton v. Braunskill, 481 U.S. 770, 777 (1987)); see also In re DiClemente, Civil Action No. 12-1226 (FLW), 2012 WL 521192, at * 2, n.2 (D.N.J. Oct. 22, 2012) (quoting Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978) (the Third Circuit has explained in the related context of a preliminary injunction that "in a situation where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required").

Under this approach, "when the movant is more likely to succeed, the harm required to be shown is less; if success is less likely, then the harm needed must weigh more heavily in the movant's favor." Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp., 397 F.Supp. 2d 537, 548 (D. Del. 2005).

Here, given the flexible standard set forth above, as detailed below, the Appellant meets the four-prong test for a stay pending appeal, especially in light of Appellant's strong likelihood of success on the merits.

## A. THE APPELLANT WILL LIKELY SUCCEED ON THE MERITS OF ITS APPEAL

The Appellant will likely succeed on the merits of its appeal of the Denial of Stay Order because in issuing the Denial of Stay Order, the District Court erred in determining, (A) as a matter of law, that the Bankruptcy Court improperly concluded that: (1) 11 U.S.C. § 363(f)(4) was satisfied; (2) the sale of Revel's assets was free and clear of Appellant's possessory rights under 11 U.S.C. § 365(h); and (3) Appellant could be adequately protected under 11 U.S.C. § 363(e) and (B) that the Bankruptcy Court's findings of fact in support of the foregoing conclusions of law were not clearly erroneous. See Exhibit "K" at pp. 34-39.

Furthermore, the Bankruptcy Court failed to make necessary specific findings of fact and conclusions of law as required by Bankruptcy Rules 7052, 9014 and Federal Rule of Civil Procedure 52, and the District Court erred in failing to

find that the Appellant is likely to succeed on its appeal even if only due to this patent deficiency in the Decision. Id. at p. 34 n. 13.

Circuit Courts review bankruptcy courts' and district courts' legal conclusions *de novo*. See In re Makowka, 754 F.3d 143, 147 (3d Cir. 2014). Factual findings are reviewed for clear error, and the bankruptcy court's and district court's exercise of discretion is reviewed for abuse thereof. See United Healthcare Systems, Inc., 396 F.3d 247, 249 (3d Cir. 2005).

Where there are mixed questions of law and fact, the Court must accept the bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but exercise 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank NA v. Metro Communications Inc., 945 F.2d 635, 642 (3d Cir. 1991).

(1) The Debtors Cannot Sell Their Assets Under 11 U.S.C. § 363(f) Free And Clear Of The Appellant's Possessory Interest Under 11 U.S.C § 365(h)

Commercial lessees, their investors and lenders require the inherent facial conflict between § 363(f) and § 365(h), a matter of first impression in the Third Circuit, to be resolved and settled.

As the District Court recognized, the Bankruptcy Court's determination that 11 U.S.C. § 363(f) trumped § 365(h) was a conclusion of law, subject to *de novo* review. Id. at p. 23. The District Court's finding that the Appellant's likelihood of

19

success on this issue is in *equipoise* is similarly a conclusion of law, subject to *de novo* review. Id.

§ 363(f) of the Code permits a trustee or debtor to sell property of the bankruptcy estate free and clear of any interests in such property, if the debtor can satisfy one of several conditions, including if such other entity consents or its interest is adequately protected. See 11 U.S.C. § 363(f). However, § 365(h) of the Code provides that a non-debtor lessee whose lease has been rejected, has the option of retaining possession, which includes all enforceable renewal terms that the tenant may insist upon unilaterally and other rights, such as the right to sublet, assign or hypothecate the lease and to use and possess the premises. See In re Taylor, 198 B.R. 142 (Bankr. D.S.C. 1996); In re LHD Realty Corp., 20 B.R. 717 (Bankr. S.D. Ind. 1982). § 365(h) states, in pertinent part, as follows:

> 365(h)(1)(A) If the Trustee rejects an unexpired lease of real property under which the debtor is a lessor and --
>
> (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or
>
> (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment or hypothecation) that are in or appurte-

nant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h). It is these rights under § 365(h)(1)(A), that the Appellant sought to clarify by the filing of its Complaint.

In enacting § 365(h)(1), Congress intended to protect a tenant's interest in real property for the term of its lease. See H.R. Rep. No. 95-595, at 349 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6305-06; S.Rep. No. 95-989 at 60 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5846. A 1978 Senate Report remarked that under the terms of § 365(h), "the tenant will not be deprived of his estate for the term for which he bargained." Id. Congress' 1994 Section-by-Section Analysis of the Bankruptcy Code reiterated Congress' intent to preserve the leasehold rights of tenants of debtors:

> This section clarifies section 365 of the Bankruptcy Code to mandate that lessees cannot have their rights stripped away if a debtor rejects its obligations as a lessor in bankruptcy. This section expressly provides guidance in the interpretation of the term "possession" in the context of the statute. The term has been interpreted by some courts in recent cases to be only a right of possession (citations omitted). This section will enable the lessee to retain its rights that [are] appurtenant to its leasehold. These rights include the amount and timing of payment of rent or other amounts payable by the lessee, the right to use, possess, quiet enjoyment, sublet and assign.

Bankruptcy Reform Act of 1994, Section–by–Section Analysis, 140 Cong. Rec. H10752–01 (Oct. 4, 1994).

As such, a majority of courts have held that § 363(f), even if one of the conditions of § 363(f) has been satisfied, does not allow trustees and debtors to sell assets free and clear of a tenant's leasehold possessory interests under § 365(h). Generally speaking, courts facing this issue rely heavily on Congress' intent, explicitly expressed in a specific statutory provision, to secure the leasehold rights of non-debtor tenants in the event of a lessor's bankruptcy. See In re Crumbs Bake Shop, Inc., 2014 WL 5508177, at *8-11 (Bankr. D.N.J. Oct. 31, 2014) (discussing at length the interplay between § 363(f) and § 365(h)); In re Zota Petroleums, LLC, 482 B.R. 154, 163 (Bankr. E.D. Va. 2012) ("The rights of the tenant may not be extinguished by a § 363 sale; to hold to the contrary would give open license to debtors to dispossess tenants by utilizing the section 363 sale mechanism."); In re Haskell, L.P., 321 B.R. 1 (Bankr. D. Mass. 2005) (holding that a debtor should not be permitted to dispossess a tenant through a sale because it would be "doing indirectly what it could not do directly" under § 365(h)); In re Churchill, 197 B.R. 283 (Bankr. N.D. Ill. 1996); In re Taylor, 198 B.R. at 167 ("To allow a sale free and clear of a leasehold interest pursuant to section 363 even if the lessee received the value of its interest from the proceeds would effectively provide a debtor-lessor with means of dispossessing a lessee, a result which would appear to be in contra-

vention of Congressional intent."); In re Samaritan Alliance, LLC, 2007 WL 4162918 (Bankr. E.D. Ky. Nov. 21, 2007).

Additionally, courts holding that § 363(f) cannot terminate a non-debtor tenant's rights under § 365(h) have relied on the longstanding principle of statutory construction that a specific statutory provision should prevail over a more general statutory provision. See Zota, supra, 482 B.R. at 161; Churchill, supra, 197 B.R. at 288. "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling." D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932). "This canon long predates both the Bankruptcy Code and the prior Bankruptcy Act, and Congress no doubt was well aware of it when crafting the Code." In re Philadelphia Newspapers, LLC, 599 F.3d 298, 328 (3d Cir. 2010) (Ambro, J., dissenting). Here, the Bankruptcy Code's specific preservation of non-debtor tenant leasehold rights in § 365(h) should take precedence over the Code's more general provision governing free and clear sales in § 363.

In Haskell, the debtor owned an assisted living facility, part of which it rented to New England Baptist Hospital ("NEBH") under a 99 year lease. NEBH paid certain operating expenses and taxes, but no rent. In Chapter 11, the debtor attempted to terminate NEBH's tenancy through a sale of its assets under § 363 free

and clear of liens claims and encumbrances, including the lease. The debtor also moved to reject NEBH's lease. Unlike in Qualitech (discussed below), NEBH, like the Appellant, actively objected to the debtor's motion to sell free and clear.

The debtors argued that it had a right to sell free and clear because it could satisfy one of the elements of § 363(f), to wit, NEBH could be compelled to accept money in satisfaction of its interest. NEBH argued that its interest could not be quantified. In finding in favor of the tenant, the bankruptcy court analyzed the relationship between § 363 and § 365 and stated that NEBH could "not be compelled to accept money for its rejected lease under § 363(f) in view of the provisions of § 365(h)," as doing so would eviscerate § 365(h). Id. at 9. The Haskell court, importantly, also held that NEBH's interest could not be adequately protected under § 365(h) unless it was permitted to remain in possession.

In rendering the Decision, the Bankruptcy Court erroneously relied, to the clear exclusion of caselaw to the contrary, as well as a host of academic analyses[5],

---

[5] Baxter, Section 363 Sales Free and Clear of Interests: Why the Seventh Circuit Erred in Precision Industries v. Qualitech Steel, The Business Lawyer Vol. 59 Feb. 2004; Jackson and Bambrick, Debunking the Perceived Conflict between Sec. 365(h) and 363(f), 33-Oct Am. Bankr. J. 52; Lichtenstein and Goldberg, What are a Tenant's Rights When a Lanlord Files for Bankruptcy?, 39 Real Est. L. J. 71; Ferretti, Eviction without Rejection - The Tenant's Bankruptcy Dilemma: Bankruptcy Code Sections 363(f) and 365(h)(1)(A) and the Divergent Interpretations of Precision Industries, Inv. v. Qualitech Steel SBQ and In re Haskell, 39 Cumb. L. Rev. 707; Neely, Precision Industries v. Qualitech Steel is Probably Wrong - But What is Right?, SM014 ALI-ABA 307; Zinman, Precision in Statutory Drafting:

on the Seventh Circuit's holding in <u>Precision Indus., Inc. v. Qualitech Steel SBQ, LLC</u>, 327 F.3d 537 (7th Cir. 2003). <u>See</u> Exhibit "G". In short, <u>Qualitech</u>, a minority opinion, albeit the only Court of Appeals decision on the issue, holds that § 365(h) applies only in lease rejections, not in the sale of property of the bankruptcy estate. <u>Qualitech</u>, <u>supra</u>, at 545. In its Denial of Stay Order, the District Court gave undeserved weight to the <u>Qualitech</u> decision, which as described below is factually distinguishable, and erroneously found that the question of whether the Appellant is likely to succeed on its appeal to be in equipoise. <u>See</u> Exhibit "K" at p. 23-25.

In the present case, the holding in <u>Qualitech</u> should be ignored because it is factually distinguishable and a poster child for the adage "bad facts make bad law." In <u>Qualitech</u>, the non-debtor tenant paid $1 per year as rent for the ground lease and the landlord debtor had the right to repurchase the leased premises for $1 at the end of the term, facts which make the lease at issue appear illusory. <u>Qualitech</u>, <u>supra</u>, at 540. The Appellant, on the other hand, invested $16 million in tenant fit-out and is required to pay percentage rent equal to 60% of its net revenue to the Debtors under the Lease. <u>See</u> Exhibit "A". Unlike the Appellant's lease, the lease in <u>Qualitech</u> was never recorded and it did not receive non-disturbance from the

---

The Qualitech Quagmire and the Sad History of Sec. 365(h) of the Bankruptcy Code, 38 J. Marshall L. Rev. 97, Genovese, <u>Precision Industries v. Qualitech Steel: Easing the Tension Between Sections 363 and 365 of the Bankruptcy Code?</u>, 39 Real Prob. & Tr. J. 627; Ancel, Reich and Graham, <u>Can a Sec. 363 Sale Dispossess a Tenant Notwithstanding Sec. 365(h)</u>, 22 Aug. Am. Bank. Ins. J. 18.

debtor's mortgagees. Qualitech, supra, at 540. And unlike the Appellant, which promptly filed objections to the sale of the assets of Revel free and clear of its interest, the tenant in Qualitech did not file an objection to the sale of the debtor's assets. Qualitech, supra, at 541; see Exhibit "B".

As stated above, in Qualitech, subsequent to the debtor's filing, the tenant delayed in objecting to the sale or seeking adequate protection, and sought relief from the court only after the sale. Qualtech, supra, at 540-541. The debtor in Qualitech did not reject the tenant's lease as an integral as part of the sale, but through a separately filed motion later in the case after the sale order was entered, and the tenant took no action in response to the rejection motion. Id. Here, the Appellant continues to vigorously oppose rejection of the Lease.

The court in Qualitech also concluded that the tenant's interest would only survive to the extent provided by applicable non-bankruptcy law, which would be the state's foreclosure law. Id. at 546. In Qualitech, the assets were sold to the debtors' secured creditor which was the equivalent of the secured creditor foreclosing and bidding back in. Id. at 540. Since the tenant's lease was junior to the rights of the debtor's mortgagees and the tenant did not obtain a non-disturbance agreement (as the Appellant did), the lease would not survive a foreclosure and thus the lease was not protected under § 365(h).

In holding that the debtor could sell its property free and clear of the tenant's possessory rights, the court noted that the sale motion and sale order did not include the rejection of the lease at issue, and that the right to remain in possession under § 365(h) exists only following the express rejection of a lease. Id. at 548.

The Qualitech court held that once the sale closed free and clear of the tenant's interest, there remained no possessory right to give effect to the rights conferred by § 365(h). Id. Unlike the Debtors, the debtors in Qualitech did not move to reject the unexpired lease pursuant to § 365. Id. Here, § 365 has expressly been invoked by the Debtors in that they have moved to reject the Lease. See Exhibit "C". Moreover, Polo North advised the Debtors, which advised the Bankruptcy Court, that Polo North intends to reject all of the Debtors' executory contracts and leases, including the Lease. Thus, Qualitech, in addition to not being binding precedent in this Circuit, is materially distinguishable.

For the reasons set forth above, the Bankruptcy Court's failure to apply the canon of statutory construction that a specific provision takes precedence over a general provision, failure to give effect to the clear intent of Congress expressed in § 365(h) and reliance on Qualitech were incorrect as a matter of law, and the District Court accordingly erred in finding that the Appellant was not likely to succeed on this issue. For the foregoing reasons however, the Appellant is likely to succeed

on the merits of its argument that § 363 does not trump § 365(h) and, as such, this Court should grant a stay pending appeal of the Denial of Stay Order.

(2)     Assuming , Arguendo, That 11 U.S.C. § 365(h) Is Not Superior To § 363(f), The Debtors Cannot Sell Free And Clear Of IDEA's Possessory Interest Because § 363(f) Has Not Been Satisfied

The Appellant is likely to succeed on the merits of its argument that § 365(f) was not satisfied such that the assets of the Debtors still could be sold free and clear of the Appellant's leasehold interest. Further, the Appellant is likely to succeed on the merits of its argument that the District Court erroneously applied the wrong standard of review to its determination of this issue.

Even if this Court were to adopt the holding in Qualitech and read § 363 in isolation to permit a sale free and clear of leasehold interests (notwithstanding the requirements of 365(h)), the sale would still fail as a matter of law because none of the prerequisite conditions to such sale, as set forth in § 363(f)(1)-(5), have been met. See Qualitech, supra, 327 F.3d at 546 n3 (noting that it was assuming for purposes of its decision that one of the conditions of § 363(f) had been satisfied); see also Dishi & Sons v. Bay Condos LLC, 510 B.R. 696 (2014).

Read in isolation, § 363(f) authorizes a trustee to sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if – (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such

interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in a bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.")

Here, the Debtors, in the their last-minute pleading, allege as a basis for satisfying § 363(f) only that the Lease is subject to a *bona fide* dispute. See Exhibit "E" at p. 9. This, as a matter of law and fact, is incorrect.

While the Code does not define "bona fide dispute," courts generally state that the applicable standard under § 363(f)(4) is "whether there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." In re Taylor, 198 B.R. 142, 162 (Bankr.D.S.C. 1996); see also In re Busick, 831 F.2d 745, 750 (7th Cir.1987). Clearly, more than a mere allegation is required to for a finding of a bona fide dispute under § 363(f)(4).

In this case, the Debtors alleged, without substantiation, and apparently the Bankruptcy Court found, though it made no specific finding of fact or conclusion of law in the Decision in connection with the Lease, that the Lease is not a "true lease." See Exhibit "K" at pp. 34-35.

In determining property rights, such as whether an agreement is a true lease as opposed to some other form of executory contract, bankruptcy courts must look to state law. In re Scharp, 463 B.R. 123, 131 (Bankr. C.D. Ill. 2011). It is also

black letter law that the (i) burden of proof lies with the party challenging the *bona fide* status of a lease, see In re Barney's, Inc., 206 B.R. 328, 332 (Bankr. S.D.N.Y. 1997); In re PCH Assocs., 804 F.2d 193, 200 (2d Cir. 1986), and (ii) the *quantum* of evidence necessary to satisfy the burden is "substantial." Id.

In the context of § 365, the term "lease" should be given its ordinary meaning "as an agreement by an owner of property (the lessor) to allow the exclusive possession of that property by another party (the lessee) for a defined period of time, in exchange for the payment of rent by the lessee, with the property reverting to the lessor at the end of the lessee's period of possession." Williston on Contracts 4th Ed. § 78:44 (2014).

In denying the Appellant's request for a stay, the Bankruptcy Court and the District Court failed to apply basic concepts of New Jersey real estate law and practice. See Barnegat Village Square, LLC v. Safeway, Inc., 2013 WL 6021955 at *3 (D.N.J. Nov. 13, 2013); see also Thiokol Chemical Corp. v. Morris County Board of Taxation, 41 N.J. 405 (1964). Under New Jersey law, In Thiokol, the New Jersey Supreme Court distinguished the leasehold interest from other interests in land as follows:

> Ordinarily when a lease is made we find an agreement by the owner-lessor to turn over specifically-described premises to the exclusive possession of the lessee for a definite period of time and for a consideration commonly called rent. Although no absolute requirement exists for the use of particular words, the instrument is usually studded with terms . . . such as "lease" "let," "demise," "grant" and the like.

Id. at 416. In other words, "a lease gives exclusive possession of the premises against all the world, including the owner . . . ." Id. at 417; Kearny v. Municipal Sanitary Landfill Authority, 143 N.J.Super. 449, 456 ("A lease vests exclusive possession in the tenant for the term even against the owner in fee; less than exclusive possession militates against a finding of the landlord-tenant relationship.") The Lease clearly qualifies as a true lease under New Jersey law.

As set forth in the Appellant's response letter filed on January 4, 2015, the Lease, in practice, bears no resemblance to either a management agreement or joint venture. See Exhibit "F" at p. 2. Generally speaking, management agreements create a principal/agent relationship, where the agent is acting solely on behalf of the principal. It is clear that the Lease did not establish such a relationship between the Debtors and the Appellant, as the Appellant, is clearly not an agent of the Debtors because the Appellant is acting in furtherance of its own interest. Id.

As stated above, the distinctions between the Lease and a common joint venture agreement are striking. For instance, parties to joint ventures, almost without exception, divide the assets of the venture upon dissolution. Here, the Appellant's rights to the leased premises and the economic benefits it derives from the Lease terminate upon the expiration of the Lease and there is no sharing of assets upon the expiration of the Lease. Id.

In addition, certain of the provisions cited by the Debtors as supporting their contention that the Lease is not a "true lease" are, in fact, commonplace in non-residential leases of real property. For instance, the payment of operating expenses by a tenant is very common in a "net lease," and in a "triple net" lease, the tenant even pays real estate taxes. Further, a provision in the Lease providing that the parties enter into a separate agreement regarding intellectual property does not support a conclusion that the Lease is not a "true lease."

With regard to the use of the demised premises, the Lease provides that "Tenant will not and shall not use the Premises for any purpose other than as set forth in the Section D(a) without the written consent of Landlord, which consent may be withheld for any reason or no reason at Landlord's sole and absolute discretion." Id. Here, requiring the Debtors' consent on a deviating use supports the conclusion that the Lease is a true lease.

Further, and perhaps most importantly, the Lease does not provide the Appellant with a purchase option at the end of its term. Id. In fact, the Lease specifically provides that "[a]t the expiration or earlier termination of the Term, Tenant shall peaceably surrender the Premises, broom clean, free of debris, in good order, condition and state of repair as required hereby . . . ." Id.; See In re UAL Corp., 307 B.R. 618, 632 (Bankr. N.D. Ill. 2004) (explaining that true leases revert back to the lessor with substantial value remaining).

Moreover, with regard to return of the demised premises to the Debtors at the end of the term, the Lease provides:

> "[t]his Lease and the tenancy hereby created shall cease and terminate at the end of the Last Term without the necessity of any notice from either Landlord or Tenant to terminate same, and Tenant hereby waives notice to vacate the Premises and agrees that Landlord shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of Premises from a tenant holding over to the same extent as if statutory notice had been given." Id.

Further, Section 8.2 of the Lease provides as follows in connection with Trade Fixtures:

> [a]ll components of the Premises Fit Out Work shall, at the expiration of the Term or earlier termination of the Lease, be deemed property of the Landlord and shall remain in the Premises with no payment therefor to be made to Tenant (subject to Section P). Tenant shall remove all personal property of Tenant that is not a part of the Premises Fit Out Work and which was installed in the Premises (subject to the Landlord's prior written approval) by or on behalf of Tenant at Tenant's sole cost and expense. Tenant shall promptly restore the damage done to the Premises by the installation and/or removal of any such personal property.

Appellant's forfeiture of improvements at the end of the Lease further demonstrates that the Lease is a true lease.

Finally, the Debtors argue, without the benefit of supporting case law, that the Lease is not a true lease because it contains a percentage rent clause. Actual real estate practice in New Jersey and relevant case law does not support the Debt-

ors' argument on this point. <u>See</u> <u>In re Dunes Hotel Assocs.</u>, 212 B.R. 110 (Bankr. D.S.C. 1997) (holding an executory contract to be a true lease in the context of 365(h) even though it contained a percentage rent clause).

With regard to whether a *bona fide* dispute exists as to whether the Lease is a true lease, the Bankruptcy Court admitted that it did not have enough evidence before it. In fact, in rendering the Decision, the Bankruptcy Court stated:

> And it's difficult because -- the question in my mind, which was brought up by Mr. Schechter, is whether the debtor showed enough to assert that bona fide dispute in regard to the interest of the -- what I'll call the amenity tenants, ACR and IDEA. **The debtor didn't give me any of the leases or, really, a lot of -- or any, really, evidence in support of its position of the bona fide dispute**, you know, and I am cognizant that this may have an impact on the body of unsecured creditors, but I can't decide it based on that aspect. I can't look at the result totally as to what the law requires. And so -- so this is the struggle that I've had. (emphasis added).

<u>See</u> Exhibit "G", Page 52 - Line 23 to Page 53 - Line 9.

Furthermore, the Bankruptcy Court stated:

> The Court does not have to make a ruling as to whether those -- whether the bona fide dispute actually exists, just that there's -- of what that dispute is, or how detailed, or whether the debtor would be successful in that litigation, but at least whether there's a bona fide dispute that exists. **And I think for the purposes of this case, with the short -- if time was not of the essence, I probably would have put this off to have more evidence presented in that matter, but based on the fact that all of the parties have indicated they need to move expeditiously, I'm going to find that the debtor has met its**

**burden of showing that there is a bona fide issue in dispute,** and will allow the sale to go forward over the objections of the -- the various tenant groups than amenity tenants, ACR and the IDE -- IDEA group. (emphasis added).

Id., Page 54 - Line 24 to Page 55 - Line 19.

In making its determination that there was a *bona fide* dispute as to all of the leases in the case, including the Lease, the Bankruptcy Court admitted that it had not reviewed the leases, and that, the Debtors had not presented evidence in support of their assertion that the Lease was subject to *bona fide* dispute. Id. For the Bankruptcy Court to hold that the Debtors had met their burden, based on an admitted lack of evidence presented, was clearly erroneous and an abuse of discretion.

In reviewing the Bankruptcy Court's decision, the District Court erroneously held that the determination of whether the Debtors satisfied § 363(f) was a question of fact to be reviewed only for clear error, citing to three cases which do not support that broad proposition. See Exhibit "K" at pp. 27-28. To the contrary, the legal issue of whether a debtor has satisfied § 363(f) is subject to *de novo* review. In re PBBPC, Inc., 484 B.R. 860, 866 (B.A.P. 1st Cir. 2013). The first case cited by the District Court is Hewlett v. U.S. Bankr. Ct., 2007 WL 3232239 at *1 (N.D.Cal. Oct. 31, 2007). In Hewlett, the court was ruling on a petition for a writ of mandamus, in which the bankruptcy court's factual *and legal* conclusions were subject to

the clear error standard of review. Ibid. The second case is In re Netfax, Inc., 335 B.R. 85, 94 (D.Md. 2005). In Netfax, the district court applied the clear error standard of review to the bankruptcy court's valuation of liens, not to the broader issue of whether the debtor had satisfied § 363(f). Ibid. The third case is In re East Redley Corp., 93 B.R. 348, 350 (E.D.Pa. 1988). In Redley, the district court applied the clear error standard of review to the bankruptcy court's factual finding on the disputed question of the date a sale took place, not to the broader issue of whether the debtor had satisfied § 363(f). Ibid.

The District Court's determination of which standard of review to apply to the Bankruptcy Court's determination that the Lease was subject to a *bona fide* dispute is itself a conclusion of law, subject to *de novo* review. Additionally, the Bankruptcy Court's conclusion that the Lease was subject to a *bona fide* dispute, where there was no dispute over any evidence in support of that contention, is a conclusion of law subject to *de novo* review. In re Dilley, 339 B.R. 1, 5 (B.A.P. 1st Cir. 2006).

The District Court 's reliance on the mere fact that the Appellant had sought a declaratory judgment regarding the Appellant's lease with the Debtors to find the existence of a *bona fide* dispute, see Exhibit "K" at p. 35, was erroneous as a matter of law. In re Vortex Fishing Systems, Inc., 277 F.3d 1057, 1066 (9th Cir.2002)

("the mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute.")

Based on the argument above, it is clear that the Bankruptcy Court and District Court erred in their respective determinations that the Lease is subject to a *bona fide* dispute, that the clear error standard of review applied to that determination, and that the Bankruptcy Court did not err in its conclusion. As a matter of law, the Debtors should not be able to sell free and clear of the Appellant's possessory interests and, as such, this Court should grant a stay pending appeal of the Denial of Stay Order.

(3)    Assuming, Arguendo, That (i) § 365(h) Is Not Superior To § 363(f) As A Matter Of Law, And (ii) § 363(f) Has Been Satisfied, The Sale Could Not Be Free And Clear Because The Bankruptcy Court Did Not Provide <u>Appellant Adequate Protection</u>

The Bankruptcy Court should not have entered the Sale Order free and clear of Appellant's possessory interest pursuant to § 365(h) because it failed to provide adequate protection to Appellant for its possessory interest pursuant to 11 U.S.C. § 363(3). Section 363(e) states:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in the property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).

Section 363(e) provides that at any time, on request of an entity with an interest in property that has been used, sold, or leased, or that is proposed to be used, sold or leased, the court, with or without a hearing, must prohibit or condition such use, sale or lease as is necessary to provide "adequate protection." The term adequate protection is intended to be a flexible one. Section 361 provides examples of adequate protection: (1) periodic cash payments; (2) additional replacement liens; and (3) such other relief as will provide the "indubitable equivalent" of the interest.

So, even if the Debtors could satisfy § 363(f), they would still need to provide the Appellant with adequate protection under § 363(e) for the interest in the Lease that would be lost. And, according to relevant case law, only continued possession would serve to adequately protect the Appellant under the circumstances presented by this case as is required by § 363(e). "Where it is improbable that the lessee will receive any compensation for its interest from the proceeds of the sale, and it is difficult to value the lessee's unique property interest, courts have similarly concluded that 'adequate protection can be achieved only through continued possession of the leased premises.'" Dishi & Sons, 2014 WL 2199819 at * 14 (quoting In re Haskell, 321 B.R. at 10). The District Court's conclusion that a general unsecured claim for rejection damages may suffice to protect the Appellant's possessory rights under § 365(h), see Exhibit "K" at p. 36, is erroneous as a matter of law. Ibid.

(4)    The Bankruptcy Court Failed To Make The Required Findings Of Fact And Conclusions Of Law

The District Court erred as a matter of law when it determined that the Bankruptcy Court, in rendering the Decision, made the required finding findings of fact and conclusions of law. See Exhibit "K" at p. 34 n. 13.

Federal Rule of Civil Procedure 52, incorporated herein by Bankruptcy Rules 7052 and 9014, requires that findings of fact and conclusions of law be stated on the record after the close of evidence or to appear in an opinion or memorandum of decision filed by the court. Specifically, in an action tried on the facts without a jury, "the court must find the facts specifically and state its conclusions of law separately." Fed. R.Civ.P 52(a), incorporated by Fed.R.Bankr.P. 7052.

According to the relevant case law, a court's findings of fact need be sufficient to indicate the factual basis for the ultimate conclusion. In other words, findings of fact will be deemed sufficient if they allow an appellate court to ascertain what evidence the trial court accepted as credible or what it rejected, and provide a basis for review of the trial court's findings. See e.g., In re Hechinger Inv. Co., 2005 WL 1793503 at *2 (3d Cir. July 29, 2005).

Courts have held that an appellate court must have a clear understanding of the grounds on which the trial court based its decision. Inverness Corp. v. Whitehall Labs., 819 F.2d 48, 50 (2d Cir. 1987) (remanding case to district court for failure to clearly state ground or basis of its decision granting preliminary injunction).

Further, a court's findings must be expressed with sufficient particularity to enable the appellate court to follow the trial court's reasoning and to determine whether the law has been applied correctly without having to resort to speculation. Conclusory findings do not supply the reviewing court with adequate information to render a decision. Id. at 50.

Here, it is clear the Bankruptcy Court did not meet the above standards. Nowhere in the Decision does the Bankruptcy Court clearly set forth its findings of fact and the application of the law to any such findings. See Exhibit "G". Specifically, the Bankruptcy Court made absolutely no findings of fact in connection with the Lease. Moreover, as noted *supra*, a review of the Decision indicates that the Bankruptcy Court did not even review the Lease prior to rendering judgment: "The debtor didn't give me any of the leases or, really, a lot of -- or any, really, evidence in support of its position of the bona fide dispute. . ." See Exhibit "G" at p. 52-53.

The Bankruptcy Court indicates in the Decision that it struggled with whether the Debtors had submitted enough evidence to sustain their burden of showing the existence of a *bona fide* dispute, stating that it "went back to some documents...filed early in the case...by the amenity tenants" describing the Amenity Tenants and the Debtors as "partners." See Id. at p. 53-54. It appears as though the Bankruptcy Court's sole reason for finding against the Appellant, was reliance

on written comments made by another party, to wit, the Amenity Tenants, about their own relationship with the Debtors, which comments do not reflect upon the Appellant's relationship with the Debtors. As stated, the Appellant never made any admissions, either written or oral, that they were in partnership with the Debtors. Accordingly, even if the Bankruptcy Court's rationale could be seen as a "finding of fact," it should not have been applied to the Appellant.

The District Court in its Opinion in support of the Denial of Stay Order held the Bankruptcy Court did make sufficient findings of fact and conclusions of law in accordance with FRCP 52. See Exhibit "K" at p. 34 n. 13. Based on the foregoing, such holding is reversible error.

## B. IRREPARABLE INJURY TO IDEA

Irreparable harm means inadequate remedy at law. See Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981). An adequate remedy at law will result from a money judgment. However, if a money judgment is unenforceable, then movant will not have an adequate remedy at law and will be irreparably harmed. Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304 (E.D. Pa. 2007). Here, a money judgment will not compensate the Appellant for loss of its possessory rights under §365(h) because the Debtors are insolvent and, as a result, have no ability to provide payment on any claim the Appellant may have. See Seide v. Crest Color, Inc., 835 F.Supp.

732, 738 (S.D.N.Y. 1993) (risk of insolvency in action warranted grant of prelimi-
nary injunction); <u>Minard Run Oil Co. v. U.S. Forest Serv.</u>, 670 F.3d 236, 255 (3d
Cir. 2011) ("As a general matter, a purely economic injury, compensable in money,
cannot satisfy the irreparable injury requirement, but an exception exists where the
potential economic loss is so great as to threaten the existence of the movant's
business). Moreover, the closing of the transaction authorized by the Sale Order
may have the practical effect of extinguishing Appellant's possessory rights pursu-
ant to § 365(h) and make the Appellant's appeal moot. <u>See In re One 2 One Com-
munications, LLC</u>, 2013 WL 3864056 (D.N.J. July 24, 2013).

## C.  LACK OF HARM TO THE DEBTORS AND POLO NORTH

As set forth above, the Appellant will be irreparably harmed if a stay is not
granted, while there is little probative evidence before the Court that the Debtors or
Polo North would be prejudiced by the entry of a limited stay pending appeal, es-
pecially if there is an expedited appeal of the Sale Order. The Debtors and Polo
North can always extend the closing date. In fact, the asset purchase agreement
between the Debtors and Polo North does not even require that the Debtors provide
a Sale Order selling free and clear of tenant's possessory rights. So, to the extent
Polo North received such relief, it is receiving more than it bargained for.

In short, in denying the Appellant's request for a stay, the District Court
clearly put great weight on the in-court statements of Polo North's counsel and the

arguments contained in the Debtors' brief regarding the risk to the estate if a closing does not occur.  See Exhibit "K" at p. 42-44. However, these statements represent only counsel's argument and are not probative evidence.  See In re Buckingham, 197 B.R. 97, 101 (Bankr. D. Mont. 1996); In re Smith, 170 B.R. 111, 117 (Bankr. N.D. Ohio 1994); In re Grove Peacock Plaza, Ltd., 142 B.R. 506, 511 (Bankr. S.D. Fla. 1992); In re REPH Acquisition Co., 134 B.R. 194, 206 (N.D. Tex. 1991).

Given this lack of probative evidence on the issue, the District Court should have determined there was a lack of harm to the Debtors and Polo North and its determination of harm is reversible error.   Further, Polo North has indicated no urgency to reopen the Revel.  In fact, to date, Polo North has yet to set forth a cohesive plan indicating just what it intends to do with the Debtors' assets.

As argued above, if the Court ultimately stays only those portions of the Sale Order that authorize the Debtors to sell their assets free and clear of the Appellant's possessory interests under 11 U.S.C. § 365(h), the parties could close and the Appellant's rights would be preserved and the relief requested pursuant to its appeal would not be rendered moot by operation of law.

## D.   PUBLIC POLICY WILL BE FURTHERED BY ENTRY OF A STAY PENDING APPEAL

The furtherance of public policy is a consideration in stays pending appeal. See In re Suprema Specialties, Inc., 330 B.R. 93 (S.D.N.Y. 2005) (granting stay

pending appeal in part due to public policy concerns); In re Quade, 496 B.R. 520 (Bankr. N.D. Ill. 2013) (same). In denying the Appellants' stay request, the District Court found, in the context of bankruptcy proceedings, public policy favors finality. Nordhoff Investments, Inc. v. Zenith Electronics Corp., 258 F.3d 180 (3d Cir. 2001); In re Genesis Health Ventures, Inc., 280 B.R. 339, (D. Del. 2002); In re W.R. Grace & Co., 475 B.R. 34 (D. Del. 2012). However, the limited stay that Appellant seeks as to its possessory interests under § 365(h) will not affect the finality of the Debtors' bankruptcy cases. Given this reality, public interest militates in favor of a stay pending appeal because it will maintain the Appellant's rights, and the relief it seeks pursuant to its appeal, a matter of first impression in the Third Circuit, will not be rendered moot by closing of the Sale Order. Further, granting of a stay pending appeal will further Congress' intent in enacting § 365(h) to protect and encourage leasehold investments where tenants often make substantial investments in leasehold improvements in advance and will avoid a taking without just compensation. Moreover, the impact of the Bankruptcy Court ruling will have a disastrous effect on commercial real estate development - very few tenants will be willing to spend their own capital to improve their leasehold premises if they risk losing their investment of something wholly outside of their control occurs, such as their landlord filing for bankruptcy.

In conclusion, the Appellant submits that it has made the requisite showing required for the imposition of a stay of the Sale Order pending a final determination of its appeal of the Denial of Stay Order.

## POINT III.

## THIS COURT SHOULD GRANT
## EXPEDITED REVIEW OF THIS APPEAL

Local Rule 4.1 provides for an expedited appeal in appropriate circumstances, and such circumstances exist here, given the pending closing between the Debtors and Polo North, and the interest shared by all parties to resolve this issue and facilitate a liquidation of the Debtors' assets at the earliest possible date. See Kennecot Corp. v. Smith, 637 F.2d 181, 184 (3d Cir. 1980).

In the event that this Court denies Appellant's request for a stay pending appeal, Appellant requests, in the alternative, an expedited briefing schedule with a hearing to be held no later than February 6, 2015.

## CONCLUSION

For the foregoing reasons and in the interest of justice, the Appellant respectfully requests that this Court grant a stay pending appeal of the Denial of Stay Order so that its rights may be preserved and the relief requested pursuant to its appeal of this important legal issue not be rendered moot by operation of.

Respectfully submitted,

**RABINOWITZ, LUBETKIN & TULLY, LLC**
Attorneys for IDEA Boardwalk, LLC


By: _____
JONATHAN I. RABINOWITZ

Dated: January 29, 2015